REGAN, Judge.
The plaintiff, A. & O. Builders, general contractors, instituted this suit against the defendant, Labiche Plumbing Service, subcontractors, endeavoring to recover the sum of $1,014.10, the amount expended by them in repairing certain defects in the work performed by the defendant under an oral contract entered into between the parties on October 17, 1949, wherein the defendant agreed that they would be responsible for all defects appearing within one year after the acceptance by the owner of the work performed under the contract.
The defendant pleaded the exception of vagueness, which was apparently sustained, and after amendment of plaintiff’s petition, answered asserting that all defects which appeared within one year after the acceptance of the contract were corrected by them immediately. They then reconvened for the sum of $885, for work performed for the plaintiff on other contracts, but not incidental to or connected with this transaction.
From a judgment dismissing both the main and the reconventional demand, plaintiff prosecutes this appeal. The defendant neither appealed nor answered the *40 appeal, hence the reconventional demand is not before us.
The record reveals that plaintiff was the general contractor employed to construct the Larose Cut-Off High School and Gymnasium. On October 17, 1949, plaintiff entered into an oral sub-contract with the defendant, wherein defendant agreed to perform all of the plumbing services in connection with the erection of this building. Under the terms thereof, defendant was to perform all of their work in conformity with the specifications of Wm. R. Burk & Associates, architects, and subject to their approval, A condition of the contract stipulated that the defendant would be responsible for any and all defects which might appear within one year after the acceptance of the contract by the owner. Although the record fails to reveal the exact date that the work was completed it appears to have been consummated and accepted by the owner in October of 1950, at which time defendant was paid the sum of $27,936 therefor.
On or about December 5, 1950, or within the year after acceptance of the plumbing work by the owner, the architects addressed a letter to plaintiff stating that a recent inspection by a member of his staff disclosed the following defects
“1. The burner was set approximately 4" too high. According to drawings and installation instructions, the burner should be set about 1" above bottom of cold water leg of boiler. The burner had no firebrick on each burner head, nor was the burner enclosed in- firebricks setting as shown on drawing in bulletin VR-2.
“2. The pilot assembly was set with the flame electrode at 90 degrees from the ignition electrode instead of at 180 degrees as shown in set sec. x-x on drawing 50-VR-CL and also flame rod was not bent to the horizontal position as shown in section x-x.
“3. Firing pressure gauge was mounted on steam loop insteád of on fuel line between the firing valve and burner as shown on drawing 50-VR-CL. The master lubricated cut-off valve was omitted. The pilot gas regulator was omitted.
“4. The indicating firing cock was omitted and a lever handle LP gas cock was substituted and installed ahead of the control valve instead of beyond it.
“5. No test cock for testing for leakage of maincut-off and control valve was installed. The piping arrangement was not as shown on the drawing 50-VR-CL.
“6. The high voltage circuit for toggle switch and signal light were taken from low voltage side of the base of the protecto-relay. This is not in accord with UL or FM rulings, nor with the drawing 50WD supplied with the burner and control assembly.”
Defect, identified as No. 6 in this letter, was conceded to be part of the electrical instead of the plumbing contract. The plaintiff communicated with the defendant and informed them of the contents of this letter, which plaintiff insists were never corrected; it, therefore, was imperative that they employ Joseph J. Bindewald, plumber, to repair the defects; and, as a result, incurred an indebtedness of $1,014.-10.
To lend substance to the contention that the defects enumerated in the letter of December 5, 1950, manifested themselves within a year after acceptance of the plumbing contract by the owner, and which were never corrected by the defendant, the following individuals testified: Henry J.' Aguilar, a member of plaintiff’s firm, Robert and Joseph Bindewald, plumbers, Marion Jackson and Harwood Brown, representing the architects, and Carl Brindell, manufacturer’s representative o’f heating equipment, which sold the boiler, gas burner, etc. to the plaintiff.
On the other hand, the defendant, represented by Elmore Labiche, a member of the firm, who after honestly admitting that the defendant was notified by plaintiff of *41 the contents of the letter of December 5, 1950, and that certain defects did exist, was quite positive that all of the defects which appeared within one year after acceptance of the plumbing contract by the owner were corrected by his employees immediately upon receipt of notice thereof. In addition to Elmore Labiche, Dennis Mandot, Jr., journeyman plumber, and Anthony Aiola, steamfitter, made very positive declarations in testifying to the same effect.
We have carefully examined the voluminous record and the only serious question posed for our consideration is one of fact, and that is, whether defendant corrected the defects enumerated in the letter of December 5, 1950, after they were called to their attention. Obviously the trial judge believed that the defendant had satisfactorily discharged their obligations emanating from the contract and we are in full accord therewith.
In brief, counsel for plaintiff complains that the trial judge, in his written reasons for judgment dismissing plaintiff’s suit, observed that “the plaintiff herein has failed to prove to the satisfaction of the court the existence during the life of the contract of any irregularities in the material or workmanship as performed by the defendant herein.” It is true that the trial judge did make the foregoing statement, but wé are convinced that what he intended to convey was that any defects which ¿p-peared within one year after acceptance of the contract by the owner were' adequately corrected by the plumber.
For the. reasons assigned the judgment appealed from is affirmed.
Affirmed.